Fred G. Gruen v. Commissioner. George J. Gruen v. Commissioner.
Gruen v. Commissioner
Docket Nos. 110370, 110371.
United States Tax Court
1943 Tax Ct. Memo LEXIS 52; 2 T.C.M. (CCH) 995; T.C.M. (RIA) 43486; November 16, 1943
*52 Herbert E. Kaufman, Esq., and Zivel B. Niden, C.P.A., 11 W. 42nd St., New York, N. Y., for the petitioners. Scott A. Dahlquist, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion Respondent determined deficiencies in gift tax for the year 1938 against the petitioners, Fred G. Gruen and George J. Gruen, in the respective amounts of $7,417.93 and $6,873.80. The proceedings have been consolidated. Petitioners assign as errors in such determinations: (1) the determination that any taxable gift was made by petitioners, or either of them, in 1938; (2) the determination of the value of gifts made by petitioners for preceding years; and (3) the erroneous computation of the value of gifts made to Margaret Gruen, in Docket No. 110370, and to Robert D. Gruen and George T. Gruen, in Docket No. 110371. It was orally stipulated at the hearing that the gifts involved were made on May 6, 1938, and since no argument is made by petitioners on issue numbered (2), nor any evidence adduced with reference thereto, we will consider that issue as abandoned. This leaves the fair market value of the property which was the subject of the gifts as the only issue to be determined, that *53 issue being embraced in (3) above. Petitioner Fred G. Gruen claims an overpayment of $847.71 and petitioner, George J. Gruen claims an overpayment of $417.48. It was orally stipulated at the hearing that the basic facts with reference to the reorganization of the Gruen Watch Company as contained in the case of , may be taken as constituting the facts herein relative to the reorganization hereinafter mentioned. The stipulated facts which are not set forth in our findings of fact are included therein by reference. Findings of Fact The petitioners, residents of Cincinnati, Ohio, filed gift tax returns for the year 1938 with the collector of internal revenue for the first district of Ohio. In 1935 the petitioners, Fred G. Gruen and George J. Gruen, were president and vice president, respectively, of the Gruen Watch Company, hereinafter sometimes referred to as the company. At that time it was indebted to eight banks in the amount of $1,818,750 and was unable to meet its obligations as they matured. As a result, a plan of reorganization which passed voting control from petitioners to the banks became effective in August *54 1935. The plan of reorganization provided for a recapitalization and debentures and stocks were authorized to be issued thereunder as follows: (1) Debentures, 2% to 5%
$727,500
(2) Class A Preferred Stock, $100 par, (cumulative 1%
to 5% with limited voting
rights)
7,275 shares
(3) Class B Convertible Non-
voting 6% Preferred Stock, $1 par, subject to prior
rights and cumulative after
the retirement of the de-
bentures and Class A
Cumulative Preferred, con-
vertible into Class B Voting
6% Preferred $1 par (simi-
lar to Class B Non-voting)
or common stock on a
share for share basis,
363,750 shares
(4) Class B Convertible Voting
6% Preferred Stock, $1
par, convertible into com-
mon, share for share,
363,750 shares
(5) Class C Voting Preferred
6% Stock, $25 par, subject
to prior rights and cumu-
lative after retirement of
all above issues,
20,000 shares
(6) Common Stock, $1 par
(363,750 shares reserved,
subject to conversion privi-
lege of class B preferred)
500,000 shares
The plan further expressly provided that the holders of class B convertible non-voting preferred stock should be entitled (ratably with the holders of class B convertible voting stock) to dividends *55 out of the net earnings of the company at the rate of 6 per cent per annum before any dividends were paid on the class C preferred stock or common stock and that in case of liquidation the holders of class B convertible non-voting preferred stock should be entitled (ratably with the holders of class B convertible voting preferred stock) to receive $1 a share before any distribution would be made to the holders of class C preferred stock or common stock. The plan also provided that any holder of class B convertible non-voting preferred stock should have the right at any time to deliver such stock to the company and receive in exchange therefor, at his option, either one share of class B convertible voting preferred stock, or one share common stock for each share class B convertible non-voting preferred stock so delivered, and that the shares of class B convertible non-voting preferred stock so delivered should be cancelled. Under the plan all preferred stocks, except class C, were callable under certain conditions at par. Under the plan the banks as the holders of the company's obligations were to receive for each $1,000 thereof: Debentures, face amount $400
Class A Preferred
4 shares
Class B Convertible Non-voting
Preferred
200 shares
*56 As part of the plan the banks entered into a contract with B. S. Katz and the petitioners, known as the Katz and Gruen Contract. It was provided therein that the banks would deliver to the daughter of Fred G. Gruen 3,750 shares of class B convertible non-voting preferred stock as each 10 per cent face amount of the debentures was retired. The banks were also to deliver her 1,250 additional shares of that class of stock as often as 10 per cent of the class A preferred stock was retired plus 625 additional shares when all the class A preferred stock was retired. The banks were to deliver to the two sons of George J. Gruen, jointly, the same number of shares of class B convertible non-voting preferred stock as was to be delivered to the daughter of Fred G. Gruen and under the same conditions. The total amount which was to be delivered by the time both debentures and class A preferred stock had been fully retired was as follows: To Margaret Gruen, daughter of
Fred G. Gruen
50,625
shares
To R. D. Gruen and George T.
Gruen, sons of George J.
Gruen
50,625
shares As to the delivery of the shares of stock there were certain conditions requiring that Katz and petitioners be active *57 officers of the company at the time the obligations of the banks to deliver the shares accrued. Katz and petitioners continued as officers and directors of the company and were actively associated with it on May 6, 1938. On that date, pursuant to the "Katz and Gruen Contract," the daughter of Fred G. Gruen became entitled to, and received, 17,501 shares of class B convertible non-voting preferred stock from the banks, and the two sons of George J. Gruen, jointly, were entitled to, and received, the same number of similar shares from the banks. It was orally stipulated at the hearing that the shares so received constituted gifts made on May 6, 1938 by Fred G. Gruen to his daughter and by George J. Gruen to his two sons. On January 30, 1937, petitioners and their children entered into an agreement with A. A. Strelsin whereby the latter agreed to pay the children an aggregate of $80,000 for a 40 per cent interest in the total of 101,250 shares receivable by them under the Katz and Gruen contract. It was further agreed that upon receipt from time to time by the children of any of the stock 40 per cent thereof should be immediately delivered to Strelsin and the balance of 60 per cent *58 should be placed in escrow to be held and not sold within a year from the date of its receipt. Deficiencies in income tax were asserted against Fred G. Gruen for the year 1938 in the amount of $4,086.46 and against George J. Gruen in the amount of $3,667.64. These deficiencies were asserted by reason of the inclusion, in the income of each, as having been constructively received, of the value of 17,501 of the shares class B non-voting preferred stock involved in these proceedings and thereafter received, respectively, by the daughter of Fred G. Gruen, individually, and the two sons of George J. Gruen, jointly. For that purpose respondent valued those shares as of May 6, 1938 at $1.50 each. The petitioners have been insolvent from 1935 to February 1943 and because of this and transferee liability his daughter paid the deficiency asserted against Fred G. Gruen, together with interest thereon, or a total of $4,721.20, and for the same reason the sons of George J. Gruen paid the deficiency asserted against him, together with interest thereon, or a total of $4,237.33. The fiscal year of the company always terminated on March 31 of each year, and as of that date all financial reports were *59 prepared for the benefit of the company and its shareholders. As of March 31, 1938 the book value of the class B convertible non-voting preferred stock was $1 per share. No dividends were paid during the fiscal years ending March 31, 1933 to March 31, 1938, inclusive, except that in both 1937 and 1938 dividends of $21,825 were paid on class A preferred. Figures reflected by annual reports of the company for the fiscal years ending March 31, 1933 to March 31, 1939, inclusive, are as follows: Book Value
Date of
Surplus
Class
Com-
Year
Report
Loss
Profit
Charges
B
mon
1933
5/25/33
$480,835.98
$2,547,988.77
1934
5/15/34
334,840.61
59,668.86
1935
799,299.39
484,240.24
1936
5/ 7/36
$ 4,745.95
14,678.42
1937
4/30/37
606,685.95
20,405.50
$1.00
$1.10
1938
5/ 7/38
726,141.87
92,661.34
1.00
3.76
1939
5/23/39
540,669.23
79,028.73
1.00
4.00
As of March 31, 1938 the outstanding captial stock of the company, as reflected by its balance sheet, was as follows: Class A preferred stock, $100 par
value; 7,275, shares authorized
and issued
$727,500.00
Class B convertible non-voting
preferred stock, $1.00 par
value; 363,750 shares authorized
and issued, less 96,496 1/2 con-
verted and cancelled, outstand-
ing 267,253 1/2 shares
$267,253.50
Class B convertible voting pre-
ferred stock, $1.00 par value;
363,750 shares authorized, 100
shares issued, converted and
cancelled; balance reserved for
conversion of Class B non-
voting preferred stock
Class C preferred stock, $25 par
value; 20,000 shares authorized
and issued, less 425 shares in
treasury, outstanding 19,575
shares
$489,375.00
Common stock, $1.00 par value;
650,000 shares authorized,
214,283 shares issued, less
2.900 1/2 shares in treasury
(267,253 1/2 shares reserved for
conversion of Class B con-
vertible stocks), outstanding
211,382 1/2 shares
$211,382.50
*60 Earnings per share, for each class of stock for the fiscal years ending 1936 to 1939 were as follows: Net Earnings
Net Earnings
Net Earnings
Year
After Surplus
Applied for
Available for
Ended
Charges
Redemption
Dividends
3-31-36
$ 19,424.37
$ 19,424.37
3-31-37
586,280.45
$441,435.68
144,844.77
3-31-38
633,480.53
431,564.32
201,918.21
3-31-39
461,640.50
174,600.00
287,040.50
Class A
Class B
Class C
Pre-
Pre-
Pre-
ferred
ferred
ferred
Common
Earned
Paid
Earned
Paid
Earned
Paid
Earned
Paid
3-31-36
$2.67
None
None
None
None
None
None
None
3-31-37
3.00
$3.00
$ .06
None
$1.50
None
$ .60
None
3-31-38
3.00
3.00
.06
None
1.50
None
.64
None
3-31-39
4.00
4.00
.06
None
1.50
None
.66
None
The figures appearing on the three foregoing tabulations as of March 31, 1938 are substantially the same as those existing on May 6, 1938. The annual report of the president of the company to its stockholders issued May 7, 1938 stated, inter alia, "sales throughout the watch industry declined greatly beginning in October 1937, but despite this decline in general business in our *61 industry the sales and profits of your company were again the greatest in its history." Under the reorganization agreements, before the class B convertible non-voting preferred stock or the common shares could be redeemed, all outstanding debentures and class A preferred stock had to be retired; no dividends were payable on any stock, except the class A preferred; and no stock of the company could be purchased or retired so long as the debentures were outstanding. Seventy-five per cent of the annual net earnings, less any amounts paid out during the year as dividends on class A preferred stock, was required to be paid toward the redemption of the debentures, and was, accordingly, not available for dividends. A balance of $286,064.32 due on the debentures was paid between March 31 and May 6, 1938. Subsequent to April 30, 1937 and prior to May 7, 1938, class A preferred stock aggregating $145,500 had been retired. Immediately prior to May 6, 1938 there were 211,382 1/2 shares of the common stock outstanding, of which the general public held about 103,000 shares distributed among approximately 1,600 shareholders. The balance was held by the petitioners, Katz, and A. A. Strelsin. The *62 outstanding class B convertible non-voting preferred stock was held by the banks immediately prior to May 6, 1938; the other outstanding stock of that class having been converted into common. None of the issues of stock was listed on any exchange. The common stock was traded in over-the-counter transactions, chiefly in Cincinnati, Ohio, the company's home office. The number of shares of common stock transferred on the company's books was slightly less than 11,000 shares in 1938 and 12,000 shares in 1939. These were exclusive of transfers in relation to the Katz and Gruen family shares. Actual over-the-counter transactions in the common stock of the company in Cincinnati during April and May 1938 are shown as follows: Shares
Shares
Date
Purchased
Sold
Price
April 14
30
3 1/2
14
30
3 3/4
16
225
3 3/8
18
100
3 3/4
19
100
3 3/4
19
100
4 1/4
22
10
3 5/8
23
3
3 1/8
27
125
3 3/4
29
30
3 3/4
May 2
60
3 1/2
10
1/2
2    13
82
4 1/2
14
82
4 1/2
16
100
4 5/8
16
100
5    17
100
4 5/8
18
100
4 7/8
18
100
4 7/8
19
100
4 3/4
21
13
5    23
150
4 1/2
23
30
4 1/2
24
1/2
4    Quoted *63 bid and asked price on the common stock during the period May 5 to 9, inclusive, in 1938, were as follows: Number
Date
Shares
Bid
Asked
May 5, 1938
100
3 3/4
4 3/4
5
100
3 7/8
4 7/8
5
100
3 1/2
6
100
4    4 5/8
6
4    4 1/2
7
100
4    5
7
100
4    4 5/8
7
100
4    4 1/2
9
100
4    5    9
100
4    5    9
100
4 1/4
4 3/4
Each of the petitioners filed gift tax returns for the year 1938, that of Fred G. Gruen disclosing a tax liability of $847.71 and that of George J. Gruen disclosing a tax liability of $417.48. In his computation of the deficiencies, the respondent determined that the value of the class B convertible non-voting preferred stock here involved was $5 per share as of May 6, 1938 and included the value of the 17,501 shares received by the daughter of Fred G. Gruen in the computation of the latter's gift tax and included in the computation of George J. Gruen's gift tax the value of the 17,501 shares received jointly by his two sons. The deficiency notices were dated February 18, 1942. The petitions herein were each filed on April 2, 1942. The fair market value of each share of the class B convertible non-voting *64 preferred stock here involved was $3.50 on May 6, 1938. Opinion TYSON, Judge: The only issue for consideration is the value of two gifts of stock on May 6, 1938, one to the daughter of Fred G. Gruen, and the other to the two sons of George J. Gruen jointly, each gift consisting of 17,501 shares of class B convertible non-voting preferred stock of the Gruen Watch Company. Respondent in his deficiency notice valued the stock at $5.00 per share. He now urges on brief, that the fair market value of the stock per share as of the crucial date was at least $4, in lieu of the value of $5, as asserted in the deficiency notice, and in place of the value of $1.9728, which was the amount fixed by the petitioners at the time their returns were filed. The petitioners submit that a determination of a fair market value of $1.50 per share for the stock involved would be proper. Two expert witnesses introduced by the petitioners, and the only witnesses testifying as to actual figures of the value of the stock, testified that each of the blocks of 17,501 shares would, on the crucial date of May 6, 1938, be of a lesser fair market value per shares than would be the value per share of the same character *65 of stock as shown by actual sales thereof or bid and asked quotations therefor on or about that date in 100 share lots; and having no reason to doubt that such is a fact, it should be taken into consideration as a factor in determining the fair market value of the stock involved. , affirming , and authorities cited therein; and authorities cited therein, certiorari denied ; , affirming ; and . However, we do not believe that the fair market value per share of the blocks of 17,501 shares class B convertible non-voting preferred stock is as fixed by either of these witnesses. The valuation of $1.25 fixed by the first of the two expert witnesses was arrived at solely from his study of the balance sheet of the Gruen Watch Company as of March 31, 1938, and a consideration of *66 the general market conditions prevailing on or about the crucial date, which condition he stated to be low. He gave no weight or consideration to market conditions prevailing at that, or any time, with regard to the Gruen Watch Company's stock, and he gave no consideration to the Katz and Gruen or Strelsin contract, or to any factors other than those mentioned. It is apparent that the factors considered by this witness to the exclusion of other pertinent factors shown by the record are inadequate factors upon which to base a valuation of the stock involved and for this reason, among others, we cannot approve the value of $1.25 per share as fixed by him for that stock. We are unable to determine from his testimony, what definite value per share of the stock in question was fixed by the second of the two expert witnesses. After fixing that value at $2.00 in his direct examination, based upon various factors, including his understanding that the prices of the common stock were quoted around May 6, 1943 at bid and asked prices of 3 1/2 and 4 1/2, respectively, on cross examination he stated that he considered actual over-the-counter sales as more important than quotations of bid and *67 asked prices, and that if during May 1938 sales were so made at 4 1/2, 4 7/8, and at 5 (as is shown to be a fact in our findings) he would alter his opinion by saying that the shares might be marketed at $2.50 instead of $2.00 per share. Also when his attention was called, on cross examination, to the fact that under the Strelsin contract (which he had theretofore read, but to which he had paid no attention, not deeming it of any importance in his analysis) only 40 per cent of each of the blocks of 17,501 shares, or approximately 7,000 shares of each block, could be put on the market on May 6, 1938, or within a year thereafter, he stated that he thought his valuation should be "stepped up" to around $2.25 or $2.50. On redirect examination he stated that the remaining 60 per cent, or approximately 10,500 shares, which could not be put on the market within a year, would have a fair market value of $1.00 on May 6, 1938. We can not determine from his testimony what definite value per share was fixed by this witness on the shares in question, and if we could, we would not substitute it for such value per share as we find in the exercise of our own independent judgment based on all the facts *68 of record. ; ; and Upon consideration of all the facts of record, including the testimony of the two expert witnesses of the petitioners, we are of the opinion, and so hold, that the fair market value of the class B convertible non-voting preferred stock here involved on May 6, 1938, was $3.50, and have found that value as a fact. In this connection, we have considered, among other factors, the sales of, and the bid and asked quotations on, the common stock into which the class B non-voting preferred stock was convertible at any time. Petitioners suggest that in determining income tax deficiencies against them for the year 1938, based on their constructive receipt of the shares here involved as income to them, respondent valued the shares at $1.50 per share, as of the same date involved in this gift tax determination, and that the value should not be found to be greater here. They did not raise that question in their pleadings by way of estoppel *69 or otherwise. Whether respondent's valuation for income tax purposes was correct is not the issue before us. We know nothing of the facts, or circumstances, upon which that valuation was based and if we did we would still have to determine the fair market value of the shares here involved for gift tax purposes upon the facts of record as presented here. Cf. . As conceded by respondent on brief, the value of the respective gifts are to be reduced by the amounts paid by the children donees in satisfaction of their transferee liability for income tax due from the respective petitioners in the amount of $4,721.20 as to Fred G. Gruen, and $4,237.33 as to George J. Gruen. Decision will be entered under Rule 50.